UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | Date | June 28, 2023 |
|---|---|---|---|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS) - DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkts. 39, 40, filed on APRIL 14, 2023)

## I.     INTRODUCTION

On March 8, 2022, plaintiff Milos Product Tanker Corporation, ("Milos"), filed this action against defendant Valero Marketing and Supply Company, ("Valero"), alleging claims for breach of contract and money had and received. Dkt. 1. Plaintiff's claims arise out of an ocean voyage charter party and therefore comprise admiralty and maritime claims pursuant to Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333(1). Id. ¶ 1. On April 20, 2022, defendant filed an answer. Dkt. 10.

On August 4, 2020, defendant filed a motion to dismiss. Dkt. 21. On November 29, 2022, following a hearing on the matter, the Court denied defendant's motion to dismiss plaintiff's breach of contract claim and granted with leave to amend defendant's motion to dismiss plaintiff's claim for money had and received. Dkt. 33. On December 8, 2022, plaintiff filed its First Amended Complaint alleging claims for breach of contract and money had and received. Dkt. 35.

On April 14, 2023, the parties filed cross motions for summary judgment. Dkts. 39, 40. On May 1, 2023, plaintiff filed an opposition to defendant's motion for summary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | Date | June 28, 2023 |
|---|---|---|---|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | |

judgment, dkt. 45, and defendant filed an opposition to plaintiff's motion for summary judgment, dkt. 46.[1]

On May 22, 2023, the Court held a hearing on the parties' cross motions for summary judgment. Prior to the hearing, the Court distributed a tentative order to the parties that found in favor of plaintiff. At the hearing, counsel for defendant contended that, contrary to the Court's tentative order, defendant does not have an obligation to pay freight because it is a private carrier, not a common carrier. In response to this contention, the Court permitted the parties to each file a supplemental brief addressing the relevance of the distinction between private and common carriers in this context. On May 30, 2023, defendant filed a supplemental brief on this issue. Dkt. 49. On June 6, 2023, plaintiff filed a response to defendant's supplemental brief. Dkt. 50.

The cross motions for summary judgment are presently before the Court. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.  BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.

Milos is a foreign corporation with its principal place of business in Santiago, Chile. Joint Stipulation of Facts, dkt. 38 ("JSF") ¶ 1. Milos is the owner of the M/T SEAWAYS MILOS vessel (the "vessel"). Id. ¶ 3. Valero is a Delaware corporation with its principal place of business in San Antonio, Texas. Id. ¶ 2. The present action arises out of the transport of certain cargo owned by Valero on the vessel from Singapore to California in the summer of 2020.

---

[1] While defendant moved for summary judgment on both the breach of contract claim and the claim for money had and received, plaintiff only moved for summary judgment on the breach of contract claim and did not oppose defendant's motion for summary judgment on plaintiff's claim for money had and received. In light of plaintiff's non-opposition, the Court **GRANTS** defendant's motion for summary judgment on plaintiff's claim for money had and received.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | Date | June 28, 2023 |
|---|---|---|---|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | |

**A.     Arrangement of Voyage and Departure from Singapore**

On or about June 19, 2020, Valero vetted the vessel and cleared it for discharge operations in Los Angeles, California. Id. ¶ 4. On June 23, 2020, Milos entered into a voyage charter party with charterer GP Global Ptd. Ltd. ("GP Global") on behalf of Gulf Petrochem FCZ. Id. ¶ 5; Defendant Valero's Statement of Uncontroverted Facts, dkt. 39-5 ("DSUF") ¶ 3. Pursuant to the charter party which used a SHELLVOY 6 charter form, Milos chartered the vessel to GP Global for the transportation of 39,585.296 tons of aviation jet fuel (the "cargo") from Singapore to California over the summer of 2020. DSUF ¶ 3; JSF ¶ 5.

Under the terms of the charter party, freight and related charges were to be paid "immediately upon completion of discharge as per owner['s] telexed/emailed invoice." Plaintiff Milos' Separate Statement of Uncontroverted Facts, dkt. 41 ("PSUF") ¶ 15. The charter party additionally included the statement that "If original bills of lading are not available at discharging port in time, owners agree to release cargo in line with charterers' instructions against L.O.I. as per owners P&I Club wording without bank guarantee signed by charterers." Id. The charter party further stated that "[o]wners shall have an absolute lien upon the cargo and all subfreights for all amounts due under this charter and the cost of recovery thereof including any expenses whatsoever arising from the exercise of such lien." Id. The charter party additionally contained a choice of law provision stating that it "shall be construed and the relations between the parties determined in accordance with the laws of England." Id.

On or about June 23, 2020, Valero engaged in negotiations with GP Global to transport the cargo and requested and received several documents related to the vessel, including the charter party. JSF ¶ 6. Valero provided GP Global documentation instructions, which instructed GP Global to include certain terms on the bills of lading, to require quality/quantity assurance documentation, and to send all documents, including the bills of lading, to Valero immediately upon loading. PSUF ¶ 18. On or about July 7, 2020, per Valero's request, Koch Refining International PTE Ltd., Co. ("Koch"), the seller of the cargo, provided specific portions of the charter party to Valero, including the provisions on discharge options and freight charges. JSF ¶ 7. These provisions included "Freight and Payment Details," which set forth Milos' wiring instructions for payment. PSUF ¶ 21. On or about July 14, 2020, Valero purchased the cargo from Koch on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | Date | June 28, 2023 |
|---|---|---|---|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | |

CIF/CFR terms.[2]  JSF ¶ 8.  Milos was not a party to the purchase/sale contract between Milos and Koch or any other contract for the purchase and sale of the cargo at any time. Id. ¶ 9.  Milos does not have an extensive history of delivering shipments of fuel to Valero.  Id. ¶ 33.

On or about July 19 and July 20, 2020, the cargo was loaded on the vessel from the Vopak Banyan Terminal in Singapore.  Id. ¶ 10.  Two negotiable bills of lading were issued for the cargo.  Id. ¶ 11.  Bill of lading number 106859/1 was issued to the order of "BP Singapore LTE LTD or assigns."  Id. ¶ 11.a.  Bill of lading number 109456/1 was issued to the order of "Vitol Asia PTE LTD or assigns."  Id. ¶ 11.b.  Both bills of lading contained the following language: "Freight and all other conditions and expectations as per Chartered stated dated in FREIGHT PAYABLE AS PER CHARTER PARTY."  Id. ¶ 12.  Valero was listed as the notify party on both bills of lading.  Id. ¶ 13.  GP Global is listed as the shipper.  PSUF ¶ 24.

On July 20, 2020, Valero requested that Koch ask the master of the vessel to advise on the estimated arrival times assuming the vessel traveled at various speeds.  JSF ¶ 14. To the extent the vessel would not otherwise make the delivery window, Valero suggested that the vessel proceed at max speed on Koch's account.  Id.  On July 27, 2020, charterer GP Global instructed the master to start sailing at max speed.  Id.

As early as July 21, 2020, Valero received non-negotiable copies of the bills of lading, which were sent to Valero by the appointed load port surveyor.  PSUF ¶ 27.  The

---

[2] "'C.I.F.' or ('Cost, Insurance and Freight') is a commonly used international commercial term meaning 'that the seller delivers when the goods pass the ship's rail in the port of shipment.  The seller must pay the costs and freight necessary to bring the goods to the named port of destination but the risk of loss of or damage to the goods, as well as any additional costs due to events occurring after the time of delivery, are transferred from the seller to the buyer."  In re M/V Rickmers Genoa Litig., 662 F. Supp. 2d 56, 62 n.5 (S.D.N.Y. 2009).  "Shipments designated 'CFR' require the seller to pay the costs and freight to transport the goods to the delivery port, but pass title and risk of loss to the buyer once the goods 'pass the ship's rail' at the port of shipment."  BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador, 332 F.3d 333, 338 (5th Cir. 2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | | Date | June 28, 2023 |
|---|---|---|---|---|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | | |

copies were labeled "Non-Negotiable Copy," but were otherwise identical to the original bills of lading. <u>Id.</u>

### B.    Preparation for Discharge and Discharge of Cargo in California

On August 14, 2020, Valero sent discharge orders for the cargo, in which Valero arranged the discharge, designated itself as the receiver of the cargo, paid the load port inspector to ensure the quality and quantity of the cargo upon discharge, demanded the vessel notify Valero of any marine incident, advised of its right to appoint a Pollution and Safety Advisor to assist with petroleum discharge, advised of speed reduction rules, and referenced the demurrage rate. <u>Id.</u> ¶ 31.

When the vessel arrived in California, the original bills of lading were not available at the discharge port. JSF ¶ 15. Accordingly, neither Valero nor anyone associated with or acting on behalf of Valero presented the original bills of lading at the time the cargo was discharged. <u>Id.</u> Charterer GP Global issued a letter of indemnity to Milos directing that delivery was to be made to Valero in the absence of the original bills of lading. <u>Id.</u> ¶ 16. On August 18, 2020, Clean Products Tankers Alliance ("CPTA"), on behalf of Milos, sent an email to Valero, Koch, and others stating that "[t]he relevant charterparty provides that freight shall be paid immediately on completion of discharge. Please note that we require the payment of freight (and demurrage) to be made to us directly as the vessel owner." <u>Id.</u> ¶ 17.

On or about August 20 and August 21, 2020, the cargo was delivered to Valero at the Vopak Terminal in Wilmington, California. <u>Id.</u> ¶ 18. Milos released the cargo at Vopak Terminal in accordance with charterer GP Global's letter of indemnity, which directed that delivery was to be made to Valero. <u>Id.</u> ¶ 19. Discharge operations commenced on August 20, 2020, and completed on August 21, 2020. <u>Id.</u> ¶ 20. Valero owned the cargo throughout the voyage and at the time of discharge. <u>Id.</u> ¶ 21. Valero is named as the consignee of the cargo and the notify party in the United States Department of Homeland Security Customs and Border Protection Inward Cargo declaration. <u>Id.</u> ¶ 22.

On August 24, 2020, Koch issued its invoice for the sale of the jet fuel, and Valero paid Koch in full for a total of $15,791,634.77 on or about August 27, 2020. DSUF ¶ 11. On August 26, 2020, in lieu of providing the original bills of lading at the time of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | Date | June 28, 2023 |
|---|---|---|---|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | |

discharge, Koch issued a letter of indemnity certifying that it had transferred title of the cargo to Valero, as required by the purchase/sale contract between Koch and Valero. JSF ¶ 24.

###### C.  Events Following Discharge

Approximately one month after the cargo was delivered, Valero received the original bills of lading. Id. ¶ 23. Koch sent the originals from its offices in Singapore to Valero in San Antonio, Texas, on September 29, 2020, via FedEx, but Valero did not receive them until sometime in October 2020. Id. Valero did not sign or endorse either of the original bills of lading following receipt. Id. The reverse side of bill of lading number 106859/1 includes three handwritten and stamped statements with signatures of unknown persons. Id. ¶ 25. The first statement says "Deliver to the Order of CA Indosuez (Switzerland) S.A." above the words "BP Singapore PTE Ltd." Id. The second says "deliver to the Order of Koch Refining International PTE LTD" above the words "Credit Agricole Corporate and Investment Bank Singapore Branch for and on behalf of CA Indosuez (Switzerland) S.A." Id. The third says "Endorse / Deliver to the Order of Valero Marketing and Supply Company" above the words "For Koch Refining International PTE LTD." Id. The reverse side of bill of lading number 109456/1 includes these three handwritten and stamped statements as well as a fourth statement, reading "Endorsed to the Order of BP Singapore PTE LTD" above an unknown signature and the words "Vitol Asia PTE Ltd." Id. ¶ 26.

Milos has not been paid freight and related charges incurred in connection with the voyage, totaling $1,054,456.74. Id. ¶ 29. This comprises freight charges in the amount of $853,125.00, demurrage in the amount of $186,282.72, and speed up charges in the amount of $15,049.02. Id. At no point did Valero commit to Milos orally or in writing that freight charges would be for Valero's account.[3] Id. ¶ 30. Valero accepted delivery of the cargo without confirming that freight and related charges had been paid to Milos.

---

[3] The parties note that this stipulation is not intended to resolve the issue of whether Valero "accepted" the freight charges by virtue of accepting the delivery of the cargo. Id. ¶ 30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:22-CV-01545-CAS (Ex) | Date | June 28, 2023 |
|----------|------------------------|------|---------------|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | |

Id. ¶ 31.  Following the delivery of the cargo, Valero has refused to comply with Milos' demands for payment under the bills of lading.  Id. ¶ 32.

In the time since the delivery of the cargo, charterer GP Global has experienced financial difficulties and decided to commence a voluntary debt restructuring process.  Id. ¶ 34.  On or around September 17, 2020, Milos was provided with notice of this process.  Id.  Milos submitted a proof of claim relating to the charter party for this voyage as part of the voluntary restructuring but has not continued to assert its claim in that process.  Id.

## III.  LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322; see Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | | Date | June 28, 2023 |
|---|---|---|---|---|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | | |

Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

Plaintiff sets forth three grounds on which it contends defendant is liable for freight and related charges incurred by plaintiff. First, plaintiff contends that defendant consented to be bound by the bills of lading, which incorporate the charter party, and therefore is subject to the charter party's terms. The parties appear to agree that if defendant is subject to the charter party's terms, it is liable for freight and related charges. Second, plaintiff argues that defendant is bound by the English choice of law clause in the charter party, and, under applicable English law, defendant is liable under the charter party. Finally, plaintiff argues that defendant assumed an implied obligation to pay freight when it accepted the cargo. The Court addresses each of these arguments in turn.

### A.   Express Contractual Obligation to Pay Freight and Related Charges

Plaintiff argues that defendant has an express contractual obligation to pay freight because it is bound by the bills of lading and the incorporated charter party. Dkt. 40 at 19. Defendant counters that plaintiff's claim fails because defendant was not a party to the charter party, the contract on which plaintiff sues, and did not otherwise consent to be bound by the terms of the bills of lading or the charter party. Dkt. 39 at 8-9. Accordingly, defendant submits that it cannot be held liable for any charges due to plaintiff under the charter party between plaintiff and its counterparty, GP Global. Id. Defendant further contends that it's being listed as the notify party on the bills of lading establishes, at most, that it is a third-party beneficiary of the bills of lading and does not impose obligations on defendant. Id. The parties appear to agree that, if the terms of the charter party bind defendant, defendant is liable for freight and related charges.

"[A] party is not bound to the terms of a bill of lading unless the party consents to be bound." In re M/V Rickmers Genoa Litig., 622 F. Supp. 2d 56, 71 (S.D.N.Y. 2009) aff'd sub nom. Chem One, Ltd. v. M/V Rickmers Genoa, 502 Fed. App'x 66 (2d. Cir. 2012). "Although intended third-party beneficiaries may enforce contract terms in their favor, the mere fact that a party is a beneficiary does not create contractual obligations for the beneficiary." Dynamic Worldwide Logistics, 77 F. Supp. 3d 364, 374 (S.D.N.Y. 2015). "Contractual obligations cannot be imposed on an intended beneficiary absent a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | | Date | June 28, 2023 |
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | | |

showing that the third party manifested acceptance to be bound or the existence of an agency relationship with one of the contracting parties." Id. Courts have found consent to be bound where a non-party files suit under the bill of lading and where there is a course of conduct demonstrating intent to be bound. Ingram Barge Co. v. Zen-Noh Grain Corp., 3 F.4th 275, 279 (6th Cir. 2021). Courts have also found consent to be bound where the non-party presents the bill of lading and accepts the cargo under it. See Zim Am. Integrated Shipping Servs. Co. v. Sportswear Group, 2021 WL 5450117, at *5 (S.D.N.Y. Nov. 18, 2021) ("A consignee can also become a party to a negotiable bill of lading and thereby assume obligations under it by presenting the negotiable bill of lading to the carrier and accepting the goods under it.").

It is undisputed that defendant has not sued under the bills of lading and that the parties do not have a longstanding course of conduct establishing defendant's consent to be bound by the bills of lading. The parties' dispute centers on whether defendant's conduct in accepting the cargo and directing the voyage is sufficient to establish its consent to be bound.

Plaintiff contends that defendant consented to be bound to the bills of lading through its acceptance of the cargo. Id. at 20. In support of this contention, plaintiff cites Pacific Coast Fruit Dist. v. Pennsylvania R.R. Co., in which the Ninth Circuit found that a consignee "brought itself into the contract of affreightment and accepted and acquiesced in the status of [] consignee" when it "took over control and direction of the shipment." 217 F.2d 273, 275 (9th Cir. 1954). Plaintiff additionally points out that defendant requested and received the terms of the charter party before the cargo departed Singapore and requested and received copies of the bills of lading immediately after the vessel's departure. Id. at 21-22. Furthermore, plaintiff argues, defendant's discharge orders specifically reference the agreed demurrage rate. Id. at 22. All of this information, according to plaintiff, demonstrates that defendant knew and contemplated its freight obligations, as well as the existence of plaintiff's lien on the cargo for any unpaid freight. Id.

In further support of its contention that defendant's course of conduct demonstrated consent to be bound by the bills of lading and charter party, plaintiff points to the numerous steps defendant took to facilitate the transport and discharge of the cargo. Id. at 21-23. These include vetting and approving the vessel, retaining title of the cargo, arranging for the vessel to increase its speed, organizing discharge operations, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                              **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | Date | June 28, 2023 |
|----------|------------------------|------|---------------|
| Title    | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | |

receiving the cargo. Id. Plaintiff additionally points out that the original bills of lading ultimately indicated that defendant was the final endorsee. Id. at 23.

Defendant responds that plaintiff is misconstruing Pacific Coast and that exercise of control over the cargo is insufficient to establish consent to be bound by the bills of lading. Dkt. 46 at 12-15. Specifically, defendant points out that, in Pacific Coast, consignee Pacific Coast, "continued to direct the further shipment of the [goods] by rail" and contends that "it was Pacific Coast's active involvement in directing . . . further carriage of the cargo . . . that justified Pacific Coast's liability for the railroad's freight charges." Id. at 14. This case is distinct, defendant argues, because, here, defendant did not continue to direct further shipment of the cargo. Id. at 15.

Defendant further asserts that its conduct in its dealing with plaintiff regarding the voyage at issue consistently demonstrated its belief that it was not liable for freight. Dkt. 39 at 13. Specifically, defendant points to communications from defendant to plaintiff's counsel stating that "Valero is not responsible [because it was] not charterer of th[e] vessel." Id. Additionally, defendant points out that the purchase/sale contract between it and Valero included CFR/CIF terms, which expressly required Koch to deal with issues related to the shipment of the fuel from Singapore. Id.

Finally, defendant contends that a consignee may become a party to a negotiable bill of lading and assume obligations under it by accepting the goods only if it presents the negotiable bill of lading to the carrier upon discharge. Dkt. 39 at 14. Because it is undisputed that defendant did not present the bills of lading at the time the cargo was discharged, defendant asserts that it cannot be bound. Id. at 14. Thus, defendant argues, the bills of lading "were totally immaterial to Valero's receipt of its purchased fuel." Id.

Having carefully considered the parties' arguments, the Court concludes that, when viewed in the light most favorable to defendant, the evidence supports a reasonable finding that defendant is bound by the bills of lading.

As an initial matter, defendant's interpretation of Pacific Coast is overly narrow. In finding the consignee liable for freight, the Pacific Coast court stated as follows:

> There is no doubt that the mere designation of a party as consignee in a bill-of-lading, without more, is insufficient to entail liability for the payment of freight charges. Other attending circumstances or factors, such as receipt and acceptance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | | Date | June 28, 2023 |
|---|---|---|---|---|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | | |

of the shipment <u>or</u> exercise or control over future movements, are necessary to create liability for the payment of the charges.  In this case, appellant not only was designated as consignee by the shipper, but, additionally and concurrently, acting in its status of consignee, it took over control and direction of the shipment and made successive reconsignments thereof.  Thus it brought itself into the contract of affreightment and accepted and acquiesced in the status of both consignee and consignor.  <u>In either or both capacities, it became liable for the charges.</u>

217 F.2d at 275 (emphasis added).

Contrary to defendant's interpretation, this language indicates that receipt and acceptance of the shipment need not be coupled with reconsignment to bind a consignee to the bills of lading.  Rather, receipt and acceptance on the one hand and control of further movements on the other are separate factors that may be considered when determining whether the consignee is bound.  Indeed, the <u>Pacific Coast</u> court clarified that Pacific Coast could be held liable <u>either</u> through its conduct as consignee (i.e., receiving and accepting the cargo) or through its conduct as consignor (i.e., directing further shipments).  <u>Id.</u>  The court went on to explain that "the assertion by [Pacific Coast] of unqualified and unequivocal dominion and control of the shipments, in successively diverting them, is equivalent to acceptance and actual receipt of the goods for the purpose of determining liability for freight charges."  <u>Id.</u>  In other words, the court viewed diversion of the cargo under the circumstances as equally indicative of liability for freight as actual receipt and acceptance of the cargo.  Nowhere does <u>Pacific Coast</u> state that one must both receive cargo and direct further shipment in order to bring itself into the contract.

As <u>Pacific Coast</u> explains, courts must consider the "attending circumstances or factors" to determine whether a non-party, through its conduct, has bound itself to a bill of lading.  <u>Id.</u>  It appears to the Court that presentation of the original bill of lading is only one such factor to be considered and that defendant overstates the import of formal presentation.  It is true that courts, in determining that a consignee's conduct amounts to consent to be bound, tend to reference acceptance of the cargo and presentation of the bill of lading together.  <u>See, e.g.</u>, <u>Zim Am. Integrated Shipping</u>, 2021 WL 5450117, at *5 (explaining that a consignee becomes a party to a negotiable bill of lading "by presenting the negotiable bill of lading to the carrier and accepting the goods under it"); <u>Ingram Barge</u>, 3 F.4th at 281 (White, J. dissenting) ("[I]f [bill of lading] purports to bind the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | Date | June 28, 2023 |
|----------|------------------------|------|---------------|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | |

consignee to its terms upon acceptance of the goods under it, those who opt to become a party to the transaction by accepting the goods and presenting the bill are bound by its terms."). But, typically, acceptance of the cargo and presentation of the bills go hand-in-hand because a consignee normally must present the negotiable bill of lading in order to take ownership of the cargo. See Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro, 775 F.2d 476, 481 (2d Cir. 1985) ("Absent a valid agreement to the contrary, the carrier . . . is responsible for releasing the cargo only to the party who presents the original bill of lading.").

The Court does not read these cases to suggest that formal presentation of the bills of lading is always required to demonstrate consent to be bound. Rather, it is one of numerous factors that may be considered. See Ingram Barge, 3 F.4th at 282 (White, J. dissenting) (finding that "presentation of the bills and acceptance of the goods is not the only evidence of consent to be bound that can be found in the record" and looking to consignee's partial payment of demurrage and failure to resell or reject the cargo if it did not agree to the terms, as further evidence of consent); OOCL (USA) Inc. v. Transco Shipping Corp., 2015 WL 9460565, at *4-5 (S.D.N.Y. Dec. 23, 2015) (considering whether defendant's conduct established that it was on notice of the bill of lading terms when determining consent to be bound); Pac. Coast, 217 F.2d at 275 (looking to defendant's "unqualified and unequivocal dominion and control of the shipments").

Here, defendant vetted the vessel and requested and received from GP Global numerous documents related to the vessel, including the charter party, which contained provisions on freight charges. Defendant negotiated with GP Global regarding the terms of the voyage and instructed GP Global to include certain terms in the bills of lading, to require quality/quantity assurance documentation, and to send all documents, including the bills of lading, to defendant immediately upon loading. Defendant received copies of the bills of lading immediately after the vessel departed Singapore. Once the vessel was in transit, defendant organized discharge operations in Los Angeles and provided discharge orders to the vessel, which referenced the demurrage rate. Upon arrival, defendant received and accepted the cargo, which it had owned throughout the voyage and upon discharge. It did so pursuant to a letter of indemnity because the charter party instructed that delivery be made pursuant to a letter of indemnity in the event that the original bills of lading were not available upon discharge. And the original bills of lading

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:22-CV-01545-CAS (Ex) | Date | June 28, 2023 |
|----------|------------------------|------|---------------|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | |

were endorsed to defendant, confirming once again that it was the intended recipient of the cargo.

Thus, the evidence unequivocally establishes defendant's "acceptance and actual receipt of the goods." Pac. Coast., 217 F.2d at 275.  Delivery of the cargo was made pursuant to defendant's own instructions and pursuant to a letter of indemnity issued per the terms of the charter party.  The evidence further establishes that defendant was on notice of the relevant terms in the charter party and bills of lading and was closely involved in the entire shipping transaction, including determination of what terms were to be included in the bills of lading.  The record does not indicate that defendant objected to the terms in the charter party or bills of lading or that defendant would not have presented the bills of lading had they been available upon discharge.  As plaintiff persuasively argues, this is not a case of misdelivery where, because the bills of lading were not available upon discharge, the cargo was delivered to an unsuspecting stranger who is now saddled with freight charges.  Rather, the cargo was indisputably delivered to the rightful owner and ultimate endorsee on the bills of lading.  It strikes the Court as inequitable and unreasonable under the circumstances to find defendant not bound simply because the original bills of lading did not arrive in time for discharge.

Defendant points to its communications with plaintiff's counsel denying liability for freight well after its acceptance of the cargo as evidence that it did not consent to be bound.  But if denying liability for freight after the fact were sufficient to demonstrate that a party is not bound, then defendants in actions for freight would never be held liable.  Defendant additionally argues that its purchase/sale contract with Koch states that Koch will bear shipping expenses and that this is evidence that defendant did not consent to be bound by the bills of lading.  The Court disagrees.  The purchase/sale contract may serve as a ground on which defendant can hold Koch liable for freight, but it is not evidence that defendant rejected the terms of the bills of lading.

Accordingly, it appears to the Court that the undisputed evidence supports a reasonable finding that defendant consented to be bound by the bills of lading and its incorporation of the charter party.

At oral argument and in its supplemental brief, defendant argued for the first time that Pacific Coast is distinguishable because the bill of lading in that case stated that the consignee and consignor would be liable for freight while, in this case, neither the bill of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | Date | June 28, 2023 |
|---|---|---|---|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | |

lading nor the charter party expressly provide that the consignee or the owner must pay freight charges.  Dkt. 49 at 3 n.4.  The Court's conclusion that defendant, through its conduct, consented to be bound by the bills of lading, depends on defendant's conduct and not on the express terms of the bill of lading.

Defendant also asserts it is not liable pursuant to the terms of the bills of lading. When asked at the hearing on the motions if there were any circumstances under which defendant would have been liable for freight charges, counsel for defendant stated that it would have been liable if defendant had presented the bills of lading upon discharge or if it had sued under the bills of lading.  Regardless, the Court is not persuaded by defendant's argument that it is not liable for freight charges pursuant to the terms of the bills of lading.

The bills of lading state that freight is payable as per charter party.  The charter party in turn states that freight must be paid "immediately upon completion of discharge as per owner['s] telexed/emailed invoice."  PSUF ¶ 15.  On August 18, 2020, CPTA, on behalf of Milos, sent an email to Valero, Koch, and others stating that "[t]he relevant charterparty provides that freight shall be paid immediately on completion of discharge. Please note that we require the payment of freight (and demurrage) to be made to us directly as the vessel owner."  Id. ¶ 17.  Thus, the charter party appears to grant the owner authority to look to another party for payment of the freight charges as set forth in the owner's telexed or emailed invoice. As provided for in the charter party, Milos looked to defendant, among others, to pay for freight in its August 18, 2020 email.  The fact that the charter party here does not expressly identify a party who must pay freight does not mean that defendant cannot be held liable for freight under its terms.  Because defendant, through its conduct, demonstrated consent to be bound by the bills of lading, it is subject to these terms and is liable to pay the freight charges in question.[4]

---

[4]  In its supplemental brief, defendant briefly contends that Pacific Coast is inapplicable because it involved a common carrier and not a private carrier.  As set forth in detail below with respect to the implied obligation to pay freight, defendant has failed to explain why this distinction is relevant, and the Court is not persuaded that Pacific Coast should be limited in this way.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | Date | June 28, 2023 |
|----------|------------------------|------|---------------|
| Title    | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | |

### B.    Obligation Under English Law

Plaintiff next argues that, because defendant consented to the terms of the charter party, it is subject to the choice of law clause providing that English law shall govern all disputes. Dkt. 40 at 23. According to plaintiff, under English law, if a charter party is incorporated into the bill of lading, the charter party terms are binding on the ultimate consignee who becomes the lawful holder of the bill of lading. Id. at 24. To be a "lawful holder" of a bill of lading, one need not have physical possession of it at the time of discharge. Id. at 24. Rather, one becomes a lawful holder of a bill of lading by "becom[ing] the holder of the bill in good faith." Id. (quoting UK COGSA 1992, Sec. 5(2)). Here, plaintiff argues, defendant owned the cargo throughout the voyage and took delivery of the cargo. Accordingly, the bills of lading were endorsed to defendant. Thus, plaintiff contends, defendant is the lawful holder of the bills of lading and is therefore bound by the charter party. Id. at 25.

Having already determined that defendant consented to be bound by the bills of lading and is otherwise liable for freight pursuant to an implied obligation, the Court need not determine whether defendant is also bound to the bills of lading under English law.

### C.    Implied Obligation to Pay Freight and Related Charges

Finally, plaintiff's motion for summary judgment asserts that, in the event the bills of lading do not expressly obligate defendant to pay freight, defendant's acceptance of the cargo gave rise to an implied obligation to pay freight. Dkt. 40 at 15. According to plaintiff, "[t]he consignee's obligation to pay freight . . . is implied by accepting the goods." Id. at 16. The fact that defendant is not listed as a consignee on the bills of lading is of no import, plaintiff argues, because one becomes the consignee by accepting the shipment. Id. at 16.

Plaintiff primarily relies on States Marine v. Seattle-First National Bank, in which the carrier, States Marine, brought suit against the shipper and Seattle-First National Bank ("Seattle-First") to recover shipping charges incurred from two shipments of salmon from Alaska to Washington. 524 F.2d 245, 246 (9th Cir. 1975). Seattle-First held a security interest in the salmon and was listed as consignee on the bill of lading. Id. The district court denied recovery for shipping charges against Seattle-First, and States Marine appealed this portion of the judgment. Id. On appeal, States Marine argued that as the consignee on the bill of lading, Seattle-First was liable to pay freight charges

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | Date | June 28, 2023 |
|---|---|---|---|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | |

because it accepted delivery of the goods when they arrived in Washington and exercised such exclusive control over the delivery that it established itself as the presumptive owner of the goods. Id. at 247. The Ninth Circuit rejected States Marine's argument that Seattle-First's conduct rendered it liable to pay freight but recognized that the consignee's liability for freight may arise pursuant to an implied contractual obligation when the consignee accepts the goods from the carrier. Id. at 248.

In so doing, the States Marine court explained that, while "it is well settled that the shipper rather than the consignee is liable to the carrier for freight charges," id. (citing Louisville & N.R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 67 (1924), "when there is some binding obligation on the part of the consignee to pay freight charges[,] the courts will look beyond the shipper's primary responsibility." States Marine, 524 F.2d at 248. Such a binding obligation may take the form of an express contractual obligation or, where the bills of lading impose no liability on the consignee, an implied contractual obligation. Id. The court went on to explain that "[t]he most obvious indication of a consignee's implied agreement to pay for freight charges occurs when he accepts the goods himself, indicating that they are his own and not the shipper's." Id. (citing Pittsburgh C.C. & St. Louis R.R. v. Fink, 250 U.S. 577, 581 (1919) ("The weight of authority seems to be that the consignee is prima facie liable for the payment of the freight charges when he accepts the goods from the carrier.")). This liability may arise from actual acceptance or "presumptive ownership" based on the consignee's "exercise of dominion and control over the shipment." States Marine, 524 F.2d at 248. The States Marine court concluded that the record demonstrated that Seattle-First "was treated and acted at all times as a secured creditor, following standard commercial practices, and not as an owner of the goods," therefore, it was not subject to an implied obligation to pay freight. Id. at 249.

Plaintiff relies on States Marine to argue that, because defendant accepted the cargo upon discharge as the cargo's owner, it assumed an implied obligation to pay freight. Dkt. 40 at 17-18. According to plaintiff "Valero received the benefit of the carriage by taking the [c]argo in good order and condition," and "[i]t is simply inequitable that . . . [p]laintiff cannot recover its freight from the party who received the benefits of the carriage." Id. at 18.

In response, defendant argues that mere acceptance of cargo is insufficient to give rise to an obligation to pay freight. Dkt. 46 at 5. Defendant contends that the case law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | Date | June 28, 2023 |
|---|---|---|---|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | |

cited by plaintiff is distinguishable because it involved straight, as opposed to negotiable, bills of lading. Id. Here, defendant points out, "the fuel was transported under negotiable bills, and freight rates were not assessed pursuant to legally posted and universally binding tariffs." Id.

It is undisputed that the relevant bills of lading were "negotiable." "A negotiable bill of lading is a document of title, while a non-negotiable [or 'straight'] bill functions more like a receipt." 22 Williston on Contracts § 59:10 (4th ed. 2020). A bill of lading is negotiable if it "runs to the order of a named consignee." Id. By contrast, a non-negotiable bill of lading states that the goods are to be delivered to a consignee. Id. Because a negotiable bill of lading is a document of title, one may transfer ownership of the cargo at issue to another by endorsing the negotiable bill of lading and delivering it to the new buyer. Allied Chem., 775 F.2d at 481. Accordingly, the carrier may deliver the goods to the party in possession of the bill of lading—even if they are not the named consignee—without facing liability for misdelivery. Id. A non-negotiable bill of lading, on the other hand, is nontransferable, and delivery must be made to the named consignee. Ingram Barge, 3 F.4th at 281 (White, J., dissenting).

Defendant asserts that States Marine and numerous other cases that plaintiff cites carry no weight here because they involved non-negotiable bills of lading. Dkt. 46 at 9. The Court is not persuaded by this argument for several reasons. First, plaintiff does cite precedent applying States Marine where negotiable bills of lading were at issue. See A/S Dampskibsselkabet Torm v. Beaumont Oil Ltd., 927 F.2d 713 (2d Cir. 1991) (hereinafter, "Beaumont"). In Beaumont, a bank, Banque Paribas ("Paribas"), was granted a security interest in cargo purchased by Beaumont. Id. at 715. Beaumont contracted with the carrier to ship the cargo from Venezuela to New York pursuant to negotiable bills of lading. Id. ("The ship's master signed three bills of lading . . . issued to the 'order of . . . Paribas . . . notify Beaumont.'"). Due to the ship rerouting, the bills of lading were not available upon discharge, thus, the cargo was delivered pursuant to a letter of indemnity. Id. The carrier filed suit against both Beaumont and Paribas for freight charges, and the district court found that Paribas had an implied obligation to pay freight under States Marine. Id. at 716. On appeal, the Second Circuit reversed, applying States Marine and concluding that the evidence did not sufficiently establish dominion and control to support a finding of presumptive ownership and a resulting obligation to pay freight. Id. at 721. In reaching this conclusion, the Beaumont court plainly stated that they "must

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                              **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | Date | June 28, 2023 |
|---|---|---|---|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | |

look to the <u>conduct</u> of Paribas to see whether a promise to pay the freight 'may be implied.'" <u>Id.</u> at 717 (citing <u>States Marine</u>, 524 F.2d at 248). The <u>Beaumont</u> court's recognition of an owner's implied obligation to pay freight and its application of <u>States Marine</u> clearly undermine defendant's argument that this obligation exclusively arises in cases involving non-negotiable bills of lading.

Additionally, defendant has not set forth any cogent rationale for distinguishing between negotiable and non-negotiable bills of lading in this context. The fact that the obligation recognized in <u>States Marine</u> is an implied obligation, rather than an express obligation set forth in the bills of lading, suggests that the content of the bills of lading bears little importance in determining whether there is such an implied obligation. Indeed, the conduct of the cargo owner is the focal point of <u>States Marine</u> and its progeny. <u>See Beaumont</u>, 927 F.2d at 717, 719-20 (rejecting the argument that Paribas' being named on the bills of lading weighs in favor of its liability where its conduct did not evidence dominion and control).

Importantly, underlying the <u>States Marine</u> rule is the equitable principle that, by accepting the cargo, the owner benefits from its carriage and should thus be obliged to pay freight. <u>See States Marine</u>, 524 F.2d at 248 ("[T]he consignee becomes liable therefor when an obligation arises on his part from presumptive ownership, acceptance of goods and services rendered, <u>and the benefits conferred by the carrier for such charges</u>.") (emphasis added) (quoting <u>Arizona Feeds v. Southern Pacific Transp. Co.</u>, 21 Ariz. App. 346, 353 (1974)). It appears to the Court that this rationale is equally applicable to voyages governed by negotiable bills of lading as to those governed by non-negotiable bills of lading.

To the extent that defendant is arguing that it cannot be subject to any obligations because it was not a party to the bills of lading and did not present the bills of lading upon discharge so as to be bound by them, this argument is unavailing for several reasons. First, as explained above, the Court has concluded that defendant's conduct was sufficient to bind itself to the bills of lading, despite defendant's failure to present the original bills of lading upon discharge. Second, the question of whether a party has consented to be bound by the bills of lading appears to the Court to be beside the point. As <u>States Marine</u> makes clear, the implied obligation is one that exists as a result of the parties' conduct, not under express terms in a contract to which the parties have agreed. <u>See</u> 524 F.2d at 245 ("Where . . . the bills of lading impose no liability [for freight] the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | | Date | June 28, 2023 |
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | | |

courts must look beyond the express contract to the conduct of the consignee to ascertain whether a promise by him to pay the freight charges may be implied)."). Accordingly, it is defendant's conduct, not the express contract, that must form the basis of the Court's inquiry.

Defendant additionally argues that plaintiff "fails to account for the historical context" of a railroad case on which States Marine relies, Pittsburgh C.C. & St. Louis R.R. v. Fink, 250 U.S. 577 (1919), and several other cases preceding States Marine, in which the consignee was found liable for payment of tariffs after it only paid the carrier a portion of the tariff rate. Dkt. 46 10. These cases, defendant argues, "w[ere] primarily concerned with ensuring that tariffs (i.e., standardized shipping rates for common carriers) publicly filed in accordance with the Interstate Commerce Act were evenly enforced, so as to avoid the potential for rate discrimination." Id. at 11. According to defendant, because this case does not involve partial payment of a standardized shipping rate or rate discrimination, there is no reason to disturb the presumption that primary liability for freight charges lies with the shipper/consignor. Id. at 12.

At oral argument and in its supplemental brief, defendant further argued that States Marine exclusively applies to common carriers subject to standardized tariffs and therefore is inapposite to this case, which involved a private carrier. See generally dkt. 49.

The Court is not persuaded by these arguments. While States Marine may have derived its holding from cases dealing with claims involving tariffs and issues of rate discrimination, the Court is not persuaded that this means that States Marine has no bearing in cases not involving tariffs. States Marine, as described above, is based on the principle that owners who benefit from the carriage of their cargo should be obligated to pay freight for such carriage. 524 F.2d at 248. Furthermore, defendant has failed to show that the distinction between common and private carriage is relevant to the determination of an implied obligation to pay freight charges. In its supplemental brief, defendant does not set forth any authority stating that the States Marine holding does not apply to private carriers or articulating a rationale for distinguishing between private and common carriers in this context. Defendant bases its argument almost entirely on a footnote in States Marine, which states as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | | Date | June 28, 2023 |
|---|---|---|---|---|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | | |

> Virtually all of the cases on a consignee's liability for freight charges involve railroads operating under the Commerce Act and tariffs filed thereunder. Since the rules established in those cases depend on both the common law and statutory authority derived from common law, the rules established in the railroad cases may properly be applied to ocean shippers operating under tariffs filed pursuant to the Shipping Act.

States Marine, 524 F.2d at 248 n.3. According to defendant, this footnote precludes application of States Marine to cases not involving common carriers shipping goods subject to publicly filed tariffs. Dkt. 49 at 2.

The Court does not read the States Marine footnote to stand for such a sweeping rule. In the footnote, the Ninth Circuit considered whether the freight obligation rules established in railroad cases may be applied to ocean shippers operating under tariffs filed pursuant to the Shipping Act, notwithstanding the fact that the railroad cases involved railroads operating under the Interstate Commerce Act. The States Marine court reasoned that it could apply the freight obligation rules to ocean shippers because those rules are based on common law principles. See id. (explaining that the freight obligation rules "depend on both the common law and statutory authority derived from common law"). Thus, those rules may be applied to ocean shippers operating under Shipping Act tariffs. And the fact that the freight obligation rules are derived from common law principles, rather than rules exclusively established by the Interstate Commerce Act, actually supports the conclusion that these rules may be applied to carriers not operating under tariffs set by statute. In short, the States Marine footnote plainly does not have the restrictive effect urged by defendant.

Furthermore, the discussion in States Marine of a consignee's implied obligation to pay freight does not attach any significance to the fact that the shipper in that case was a common carrier and not a private carrier. As explained above, the States Marine analysis focused on the parties' conduct and concluded that a party's acceptance of the goods or asserting dominion or control over the goods may give rise to an implied obligation to pay for shipping costs. See 524 F.2d at 248 ("The most obvious indication of a consignee's implied agreement to pay for freight charges occurs when he accepts the goods himself, indicating that they are his own and not the shipper's."); id. at 248-249 (analyzing whether Seattle-First accepted the goods or "otherwise exercised dominion or control necessary to imply a contractual obligation to pay the freight charges"). States

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-CV-01545-CAS (Ex) | Date | June 28, 2023 |
|---|---|---|---|
| Title | MILOS PRODUCT TANKER CORP. V. VALERO MARKETING & SUPPLY CO. | | |

Marine's status as a common carrier does not factor into this analysis, and defendant has failed to set forth any reason why States Marine cannot support the same result in a case of private carriage.  Further, none of the cases applying States Marine indicate that it only applies to cases involving common carriers, and, in fact, courts have applied States Marine to determine whether a consignee's conduct gave rise to an implied obligation to pay freight charges in cases involving private carriers.  See, e.g., Beaumont, 927 F.2d 713.

Accordingly, the question before the Court is whether, when viewing the facts in the light most favorable to defendant, the evidence reasonably demonstrates that defendant accepted the goods, "indicating that they are [its] own and not the shipper's," so as to create an implied obligation to pay freight.  States Marine, 524 F.2d at 248.  Here, the undisputed facts in the record clearly demonstrate that defendant accepted and took ownership of the cargo.  It is undisputed that defendant owned the cargo throughout the voyage and at the time of discharge.  The cargo was discharged to defendant pursuant to the letter of indemnity, and defendant arranged the discharge and identified itself as the recipient of the cargo.  As the recipient and owner of the cargo, defendant benefitted from its carriage, and, under States Marine, is subject to an implied obligation to pay the freight charges in question.

The Court thus concludes that defendant is liable for payment of the freight and related charges, even if it is not liable under the express terms of the bills of lading.

**V.    CONCLUSION**

In accordance with the foregoing, the Court **GRANTS** plaintiff's motion for summary judgment and **DENIES** defendant's motion for summary judgment.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |