UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'   JS-6

| Case No. | 2:22-cv-01545-CAS-Ex | Date | October 27, 2025 |
|---|---|---|---|
| Title | Milos Product Tanker Corporation v. Valero Marketing and Supply Company et al | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Angela Nixon | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
    Conte Cicala

Attorneys Present for Defendants:
    Keith Letourneau
    Zachary Cain

**Proceedings:** ZOOM HEARING RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 77, filed on August 22, 2025); DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT (Dkt. 84, filed on September 22, 2025)

## I. INTRODUCTION

On March 8, 2022, plaintiff Milos Product Tanker Corporation ("Milos") filed this action against defendant Valero Marketing and Supply Company ("Valero"), alleging claims for breach of contract and money had and received. Dkt. 1. Milos' claims arise out of an ocean voyage charter party and therefore comprise admiralty and maritime claims pursuant to Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333(1). Id. ¶ 1. On April 20, 2022, Valero filed an answer. Dkt. 10.

On August 4, 2020, Valero filed a motion to dismiss. Dkt. 21. On November 29, 2022, following a hearing on the matter, the Court denied Valero's motion to dismiss Milos' breach of contract claim and granted with leave to amend Valero's motion to dismiss Milos' claim for money had and received. Dkt. 33. On December 8, 2022, Milos filed its First Amended Complaint alleging claims for breach of contract and money had and received. Dkt. 35.

On April 14, 2023, the parties filed cross-motions for summary judgment. Dkts. 39, 40. On June 28, 2023, after considering the parties' submissions and oral argument, the Court granted Valero's motion for summary judgment on Milos' claim for money had and received, and granted Milos' motion for summary judgment on its claim for breach

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL    'O'    JS-6

| Case No. | 2:22-cv-01545-CAS-Ex | Date | October 27, 2025 |
|---|---|---|---|
| Title | Milos Product Tanker Corporation v. Valero Marketing and Supply Company et al | | |

of contract. Dkt. 51. On June 28, 2023, the Court entered judgment in favor of Milos and against Valero in the amount of $1,054,456.74. Dkt. 52.

On July 24, 2023, Valero filed a notice of appeal to the Ninth Circuit Court of Appeals. Dkt. 53. On September 18, 2024, the Ninth Circuit issued an opinion "revers[ing] the district court's summary judgment in favor of Milos Product Tanker Corp. and remand[ing] in Milos' action against Valero Marketing and Supply Co. for breach of a contract for the transportation by sea of jet fuel belonging to Valero." Dkt. 65 at 2 ("Opinion"). On November 29, 2024, the Ninth Circuit issued its mandate. Dkt. 66. On April 7, 2025, the United States Supreme Court denied Milos' petition for a writ of certiorari. See dkt. 73 at 1.

On August 22, 2025, Milos filed a renewed motion for summary judgment on the breach of contract claim. Dkt. 77 ("Mot."). On September 22, 2025, Valero filed an opposition to Milos' motion for summary judgment and a cross-motion for summary judgment. Dkt. 84 ("Opp."). On September 29, 2025, Milos filed a reply in support of its motion for summary judgment and in opposition to Valero's cross-motion for summary judgment. Dkt. 85 ("Reply").

On October 27, 2025, the Court held a hearing on the cross-motions for summary judgment. The cross-motions for summary judgment are presently before the Court. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.

Milos is a foreign corporation with its principal place of business in Santiago, Chile. Joint Stipulation of Facts, dkt. 38 ("JSF") ¶ 1. Milos is the owner of the M/T SEAWAYS MILOS vessel (the "vessel"). Id. ¶ 3. Valero is a Delaware corporation with its principal place of business in San Antonio, Texas. Id. ¶ 2. The present action arises out of the transport of certain cargo owned by Valero shipped on the vessel from Singapore to California in the summer of 2020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL  'O'  JS-6

| Case No. | 2:22-cv-01545-CAS-Ex | Date | October 27, 2025 |
|---|---|---|---|
| Title | Milos Product Tanker Corporation v. Valero Marketing and Supply Company et al | | |

### A. Arrangement of Voyage and Departure from Singapore

On or about June 19, 2020, Valero vetted the vessel and cleared it for discharge operations in Los Angeles, California. Id. ¶ 4. On June 23, 2020, Milos entered into a voyage charter party with charterer GP Global Ptd. Ltd. ("GP Global") on behalf of Gulf Petrochem FCZ. Id. ¶ 5; Defendant Valero's Statement of Uncontroverted Facts, dkt. 39-5 ("DSUF") ¶ 3. Pursuant to the charter party which used a SHELLVOY 6 charter form, Milos chartered the vessel to GP Global for the transportation of 39,585.296 tons of aviation jet fuel (the "cargo") from Singapore to California over the summer of 2020. DSUF ¶ 3; JSF ¶ 5.

Under the terms of the charter party, freight and related charges were to be paid "immediately upon completion of discharge as per owner['s] telexed/emailed invoice." Plaintiff Milos' Separate Statement of Uncontroverted Facts, dkt. 41 ("PSUF") ¶ 15. The charter party additionally included the statement that "If original bills of lading are not available at discharging port in time, owners agree to release cargo in line with charterers' instructions against L.O.I. as per owners P&I Club wording without bank guarantee signed by charterers." Id. The charter party further stated that "[o]wners shall have an absolute lien upon the cargo and all subfreights for all amounts due under this charter and the cost of recovery thereof including any expenses whatsoever arising from the exercise of such lien." Id. The charter party additionally contained a choice of law provision stating that it "shall be construed and the relations between the parties determined in accordance with the laws of England." Id.

On or about June 23, 2020, Valero engaged in negotiations with GP Global to transport the cargo and requested and received several documents related to the vessel, including the charter party. JSF ¶ 6. Valero provided GP Global documentation instructions, which instructed GP Global to include certain terms on the bills of lading, to require quality/quantity assurance documentation, and to send all documents, including the bills of lading, to Valero immediately upon loading. PSUF ¶ 18. On or about July 7, 2020, per Valero's request, Koch Refining International PTE Ltd., Co. ("Koch"), the seller of the cargo, provided specific portions of the charter party to Valero, including the provisions on discharge options and freight charges. JSF ¶ 7. These provisions included "Freight and Payment Details," which set forth Milos' wiring instructions for payment. PSUF ¶ 21. On or about July 14, 2020, Valero purchased the cargo from Koch on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:22-cv-01545-CAS-Ex | Date | October 27, 2025 |
|---|---|---|---|
| Title | Milos Product Tanker Corporation v. Valero Marketing and Supply Company et al | | |

CIF/CFR terms.[1]  JSF ¶ 8.  Milos was not a party to the purchase/sale contract between Valero and Koch or any other contract for the purchase and sale of the cargo at any time. Id. ¶ 9.  Milos does not have an extensive history of delivering shipments of fuel to Valero.  Id. ¶ 33.

On or about July 19 and July 20, 2020, the cargo was loaded on the vessel from the Vopak Banyan Terminal in Singapore.  Id. ¶ 10.  Two negotiable bills of lading were issued for the cargo.  Id. ¶ 11.  Bill of lading number 106859/1 was issued to the order of "BP Singapore LTE LTD or assigns."  Id. ¶ 11.a.  Bill of lading number 109456/1 was issued to the order of "Vitol Asia PTE LTD or assigns."  Id. ¶ 11.b.  Both bills of lading contained the following language: "Freight and all other conditions and expectations as per Chartered stated dated in FREIGHT PAYABLE AS PER CHARTER PARTY."  Id. ¶ 12.  Valero was listed as the notify party on both bills of lading.  Id. ¶ 13.  GP Global is listed as the shipper.  PSUF ¶ 24.

On July 20, 2020, Valero requested that Koch ask the master of the vessel to advise on the estimated arrival times assuming the vessel traveled at various speeds.  JSF ¶ 14.  To the extent the vessel would not otherwise make the delivery window, Valero suggested to Koch that the vessel proceed at "MAX speed" on Koch's account.  Id.  On July 27, 2020, charterer GP Global instructed the master to start sailing at max speed.  Id.

As early as July 21, 2020, Valero received non-negotiable copies of the bills of lading, which were sent to Valero by the appointed load port surveyor.  PSUF ¶ 27.  The

---

[1] "'C.I.F.' or ('Cost, Insurance and Freight') is a commonly used international commercial term meaning 'that the seller delivers when the goods pass the ship's rail in the port of shipment.  The seller must pay the costs and freight necessary to bring the goods to the named port of destination but the risk of loss of or damage to the goods, as well as any additional costs due to events occurring after the time of delivery, are transferred from the seller to the buyer." In re M/V Rickmers Genoa Litig., 662 F. Supp. 2d 56, 62 n.5 (S.D.N.Y. 2009).  "Shipments designated 'CFR' require the seller to pay the costs and freight to transport the goods to the delivery port, but pass title and risk of loss to the buyer once the goods 'pass the ship's rail' at the port of shipment." BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador, 332 F.3d 333, 338 (5th Cir. 2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'   JS-6

| Case No. | 2:22-cv-01545-CAS-Ex | Date | October 27, 2025 |
|---|---|---|---|
| Title | Milos Product Tanker Corporation v. Valero Marketing and Supply Company et al | | |

copies were labeled "Non-Negotiable Copy," but were otherwise identical to the original bills of lading.  Id.

### B.     Preparation for Discharge and Discharge of Cargo in California

On August 14, 2020, Valero sent discharge orders for the cargo, in which Valero arranged the discharge, designated itself as the receiver of the cargo, paid the load port inspector to ensure the quality and quantity of the cargo upon discharge, demanded the vessel notify Valero of any marine incident, advised of its right to appoint a Pollution and Safety Advisor to assist with petroleum discharge, advised of speed reduction rules, and referenced the demurrage rate.  Id. ¶ 31.

When the vessel arrived in California, the original bills of lading were not available at the discharge port.  JSF ¶ 15.  Accordingly, neither Valero nor anyone associated with or acting on behalf of Valero presented the original bills of lading at the time the cargo was discharged.  Id.  Charterer GP Global issued a letter of indemnity to Milos directing that delivery was to be made to Valero in the absence of the original bills of lading.  Id. ¶ 16.  On August 18, 2020, Clean Products Tankers Alliance ("CPTA"), on behalf of Milos, sent an email to Valero, Koch, and others stating that "[t]he relevant charterparty [sic] provides that freight shall be paid immediately on completion of discharge.  Please note that we require the payment of freight (and demurrage) to be made to us directly as the vessel owner."  Id. ¶ 17.

On or about August 20 and August 21, 2020, the cargo was delivered to Valero at the Vopak Terminal in Wilmington, California.  Id. ¶ 18.  Milos released the cargo at Vopak Terminal in accordance with charterer GP Global's letter of indemnity, which directed that delivery was to be made to Valero.  Id. ¶ 19.  Discharge operations commenced on August 20, 2020, and completed on August 21, 2020.  Id. ¶ 20.  Valero owned the cargo throughout the voyage and at the time of discharge.  Id. ¶ 21.  Valero is named as the consignee of the cargo and the notify party in the United States Department of Homeland Security Customs and Border Protection Inward Cargo declaration.  Id. ¶ 22.

On August 24, 2020, Koch issued its invoice for the sale of the jet fuel, and Valero paid Koch in full for a total of $15,791,634.77 on or about August 27, 2020.  DSUF ¶ 11.  On August 26, 2020, in lieu of providing the original bills of lading at the time of discharge, Koch issued a letter of indemnity certifying that it had transferred title of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:22-cv-01545-CAS-Ex | Date | October 27, 2025 |
|---|---|---|---|
| Title | Milos Product Tanker Corporation v. Valero Marketing and Supply Company et al | | |

cargo to Valero, as required by the purchase/sale contract between Koch and Valero. JSF ¶ 24.

### C. Events Following Discharge

Approximately one month after the cargo was delivered, Valero received the original bills of lading. Id. ¶ 23. Koch sent the originals from its offices in Singapore to Valero in San Antonio, Texas, on September 29, 2020, via FedEx, but Valero did not receive them until sometime in October 2020. Id. Valero did not sign or endorse either of the original bills of lading following receipt. Id. The reverse side of bill of lading number 106859/1 includes three handwritten and stamped statements with signatures of unknown persons. Id. ¶ 25. The first statement states "Deliver to the Order of CA Indosuez (Switzerland) S.A." above the words "BP Singapore PTE Ltd." Id. The second states "deliver to the Order of Koch Refining International PTE LTD" above the words "Credit Agricole Corporate and Investment Bank Singapore Branch for and on behalf of CA Indosuez (Switzerland) S.A." Id. The third states "Endorse / Deliver to the Order of Valero Marketing and Supply Company" above the words "For Koch Refining International PTE LTD." Id. The reverse side of bill of lading number 109456/1 includes these three handwritten and stamped statements as well as a fourth statement, reading "Endorsed to the Order of BP Singapore PTE LTD" above an unknown signature and the words "Vitol Asia PTE Ltd." Id. ¶ 26.

Milos has not been paid freight and related charges incurred in connection with the voyage, totaling $1,054,456.74. Id. ¶ 29. This comprises freight charges in the amount of $853,125.00, demurrage in the amount of $186,282.72, and speed up charges in the amount of $15,049.02. Id. At no point did Valero commit to Milos orally or in writing that freight charges would be for Valero's account.[2] Id. ¶ 30. Valero accepted delivery of the cargo without confirming that freight and related charges had been paid to Milos. Id. ¶ 31. Following the delivery of the cargo, Valero has refused to comply with Milos' demands for payment under the bills of lading. Id. ¶ 32.

---

[2] The parties note that this paragraph of the Joint Stipulation of Facts is not intended to resolve the issue of whether Valero "accepted" the freight charges by virtue of accepting the delivery of the cargo. JSF ¶ 30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL    'O'    JS-6

| Case No. | 2:22-cv-01545-CAS-Ex | Date | October 27, 2025 |
|---|---|---|---|
| Title | Milos Product Tanker Corporation v. Valero Marketing and Supply Company et al | | |

In the time since the delivery of the cargo, charterer GP Global has experienced financial difficulties and decided to commence a voluntary debt restructuring process. Id. ¶ 34. On or around September 17, 2020, Milos was provided with notice of this process. Id. Milos submitted a proof of claim relating to the charter party for this voyage as part of the voluntary restructuring but has not continued to assert its claim in that process. Id.

### III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'   JS-6

| Case No. | 2:22-cv-01545-CAS-Ex | Date | October 27, 2025 |
|---|---|---|---|
| Title | Milos Product Tanker Corporation v. Valero Marketing and Supply Company et al | | |

## IV. DISCUSSION

On June 28, 2023, the Court granted summary judgment for Milos, concluding that Valero has an express contractual obligation and an implied obligation to pay freight and related charges in question to Milos. Dkt. 51. The Court found that Valero's conduct demonstrated consent to be bound by the bills of lading, and the bills of lading incorporated the terms of the charter party which appear to grant Milos the authority to look to another party for payment of the freight charges as set forth by invoice. Id. at 13-14. The Court also found that even if Valero is not liable under the express terms of the bills of lading, Valero is subject to an implied obligation to pay the freight charges under States Marine v. Seattle-First National Bank, 524 F.2d 245, 246 (9th Cir. 1975). Id. at 21. Having determined that Valero was liable under an express or implied obligation, the Court found it unnecessary to reach Milos' argument that Valero is liable under English law, made applicable by the choice of law provision in the charter party. Id. at 15.

The Ninth Circuit reversed the Court's order, holding that "Valero has no express or implied obligation to pay freight, demurrage, or speed-up costs to Milos, and Milos cannot recover in equity." Opinion at 22. The Ninth Circuit declined to consider in the first instance the argument that Valero is obligated to pay freight under English law. Id.

Now, Milos argues that choice of law rules require the application of English substantive law, which, according to Milos, obliges Valero to pay freight charges to Milos. Mot. at 13, 17. Alternatively, Milos argues that the Ninth Circuit left open the possibility that Milos could establish on a more complete record, including at trial, that the parties through their conduct and communications, bound themselves to an implied-in-fact contract under U.S. law. Id. at 12-13. Valero argues that the sole remaining issue for the Court on remand is Milos' English law theory of liability, and that the Court should find for Valero on that issue. Opp. at 2-3. Therefore, Valero concludes that the Court should grant summary judgment for Valero and dismiss Milos' remaining claim against it with prejudice. Id.

### A. Choice of Law Analysis

Milos argues that Valero is liable to pay freight under English substantive law. Mot. at 13. Milos contends that a choice of law clause in a maritime contract is presumptively enforceable, and that a choice of law clause also binds intended third-party beneficiaries. Id. at 13-14. Milos argues that Valero became at least a third-party

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL   'O'   JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-01545-CAS-Ex | Date | October 27, 2025 |
| Title | Milos Product Tanker Corporation v. Valero Marketing and Supply Company et al | | |

beneficiary under the terms of its contract with Koch, which itself was governed by English substantive law. Id. Milos argues that Valero freely chose English law to govern its contract with Koch relating to the cargo, and it freely chose to become a beneficiary of Koch's charter party with Milos. Id. According to Milos, Valero also agreed that the letter of indemnity ("LOI") that Koch provided to Valero, permitting Valero to demand delivery of the cargo, would be governed by English law. Id. at 15. Milos contends that Valero was on notice of, and approved, that the charter party had an English governing law clause. Id. Milos concludes that "under United States choice of law rules, when Valero demanded release of Cargo under the LOI, Valero implicitly accepted to be bound to the choice of English law, as set forth in the Charter Party, in the Letter of Indemnity under which Valero accepted delivery of the Cargo, and in its own contract with Koch." Id. at 16. Additionally, Milos argues that Valero bound itself to the terms of the charter party, including the choice of law clause, through its conduct of vetting, approving, and directing the delivery. Id. at 16-17.

In opposition, Valero argues that the sole basis for applying English law to Milos' claim is premised on Valero being bound by the choice of law provision in the charter party, and the Ninth Circuit's decision on appeal forecloses any such finding. Mot. at 13. Valero contends that its contract with Koch, while also containing an English law provision, has no bearing on whether English law governs Milos' claim because Milos was not a party to that contract and Milos' claim is not premised on any breach of that contract. Id. at 11-12 n.11. Valero argues that it cannot be bound to the choice of law provision in the charter party as a third-party beneficiary because it did not consent to be bound by the charter party. Id. at 16. Valero further argues that the bills of lading do not incorporate the charter party's choice of law provision. Id. at 21. Finally, Valero argues that the Ninth Circuit's findings that Valero was not a direct party to the charter party and that its conduct did not show an agreement to be bound are dispositive on this motion. Id. at 28.

In reply, Milos argues that Valero is an intended third-party beneficiary of the charter party on the basis that the charter party required Milos to discharge the cargo to Valero pursuant to a letter of indemnity. Reply at 3-4. Milos contends that "Valero's exploitation of its third-party beneficiary status has to be subject to the law of some jurisdiction, and that law should be English law, which governs the Charter Party and the Letter of Indemnity to Milos. This is especially true here, because Valero became a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:22-cv-01545-CAS-Ex | Date | October 27, 2025 |
|---|---|---|---|
| Title | Milos Product Tanker Corporation v. Valero Marketing and Supply Company et al | | |

third-party beneficiary of the Charter Party by virtue of its sales agreement with Koch, which was also governed by English law." Id. at 4. Milos contends that Valero does not dispute that it demanded and received a copy of the charter party before it purchased the cargo and thus it was aware of the terms of the charter party. Id. Milos argues that a third-party beneficiary with advance notice is bound to a choice of law clause in a contract when it knowingly seeks to take the benefits of the contract while avoiding the burdens associated with those benefits. Id. at 10. Milos argues that Valero knowingly accepted and exploited its third-party beneficiary status by directing delivery to itself, and by accepting delivery, which it could only do through the LOI issued to Milos under the charter party. Id. at 12. Milos also argues that the Ninth Circuit's findings on appeal are largely inapplicable to this motion because the Ninth Circuit's decision applied United States law and expressly left open all issues related to English law. Id. at 7.

The Court finds that Valero is not bound by the choice of law provision in the charter party because Valero was not a party to that contract. See JSF ¶ 5; Hansen v. New Prime, Inc., No. 219-CV-07517-DOC-AGR, 2023 WL 5421791, at *3 (C.D. Cal. June 22, 2023) ("No contract can be enforced against a nonparty, which renders the choice-of-law provision unenforceable."). Furthermore, the Court finds that Valero's status as a third-party beneficiary to the charter party does not bind Valero to the charter party's choice of law provision because the evidence does not show any attempt by Valero to enforce or exploit any rights under the charter party that it may have had as an intended third-party beneficiary. While intended third-party beneficiaries may have rights to enforce a contract, intended third-party beneficiaries generally cannot be bound to terms of a contract to which the third party did not consent. See Comer v. Micor, Inc., 436 F.3d 1098, 1102 (9th Cir. 2006) ("A third party beneficiary might in certain circumstances have the power to sue under a contract; it certainly cannot be bound to a contract it did not sign or otherwise assent to."). Exceptions to the rule that third-parties may not be bound by choice of law clauses may be found "under ordinary contract and agency principles." See Paracor Fin., Inc. v. Gen. Elec. Cap. Corp., 96 F.3d 1151, 1165 (9th Cir. 1996) (quoting Letizia v. Prudential Bache Sec., Inc., 802 F.2d 1185, 1187 (9th Cir.1986)). To the extent that Milos argues that Valero's conduct constitutes consent to be bound by the terms of the charter party, the Ninth Circuit reached a contrary conclusion. See Opinion at 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'   JS-6

| Case No. | 2:22-cv-01545-CAS-Ex | Date | October 27, 2025 |
|---|---|---|---|
| Title | Milos Product Tanker Corporation v. Valero Marketing and Supply Company et al | | |

To the extent that Milos argues, alternatively, that equitable estoppel precludes Valero from avoiding the terms of the charter party, including the choice of law clause, the Court disagrees. Viewing the evidence and stipulated facts in the light most favorable to Milos, the Court finds that Valero's demands for discharge and acceptance of the cargo pursuant to the LOI do not constitute Valero' exploitation of its rights under the charter party but rather the intended third-party benefits of the charter party, an agreement exclusively between Milos and GP Global. See JSF ¶¶ 16, 19. In the context of arbitration agreements, "nonsignatories have been held to arbitration clauses where the nonsignatory 'knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.'" Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 199 (3d Cir. 2001)). However, the Ninth Circuit noted that in DuPont "it was a nonsignatory who brought claims against the signatory, rather than the signatory bringing claims against a nonsignatory," and the Ninth Circuit found "no basis for extending the concept of equitable estoppel of third parties in an arbitration context beyond the very narrow confines delineated in [DuPont and Comer]." Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1046 (9th Cir. 2009). Accordingly, since Milos, a signatory to the charter party, brought this action against Valero, rather than the reverse, equitable estoppel does not bind Valero to the charter party's choice of law provision. See also Gulf Trading & Transp. Co. v. M/V Tento, 694 F.2d 1191, 1196 n.8 (9th Cir. 1982) (discussing the Second Circuit's holding in a maritime lien case that a charterer could not use a choice of law provision against a third party with which it had no agreement as "merely stating an obvious truism—nonparties cannot be bound by an agreement").[3]

---

[3] At oral argument, counsel for Milos argued that the Court should not find any meaningful distinction between Valero receiving delivery of the cargo pursuant to its third-party beneficiary status under the charter party versus Valero suing Milos under the charter party to enforce delivery. Milos argues that such a distinction would create uncertainty at the point of delivery over which parties are liable to pay vessel owners for the transport of cargo. The Court disagrees. The distinction is necessary to conform with contract law that a third-party beneficiary "certainly cannot be bound to a contract it did not sign or otherwise assent to." Comer v. Micor, Inc., 436 F.3d 1098, 1102 (9th Cir. 2006). Equitable estoppel may bind a third party to the terms of a contract when that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL   'O'   JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-01545-CAS-Ex | Date | October 27, 2025 |
| Title | Milos Product Tanker Corporation v. Valero Marketing and Supply Company et al | | |

Additionally, the parties dispute whether the bills of lading incorporate the charter party's choice of law clause. The Court need not decide whether the bills of lading incorporate the charter party's choice of law provision because Valero did not consent to be bound by the bills of lading. See Opinion at 19-20 ("Valero's conduct does not show that it agreed to be bound by the bills of lading. Valero did not sue on the bills of lading, Valero has no longstanding dealings with Milos, and Milos does not argue Valero negotiated the bills of lading through GP Global."). Furthermore, the Court need not consider the choice of law provision in the Valero-Koch purchase agreement because Milos is not a party to that contract, nor is Milos' claim premised on that contract. See JSF ¶ 9; Paracor Fin., Inc. v. Gen. Elec. Cap. Corp., 96 F.3d 1151, 1165 (9th Cir. 1996) ("A choice-of-law clause, like an arbitration clause, is a contractual right and generally may not be invoked by one who is not a party to the contract in which it appears.").

In sum, while "choice-of-law provisions in maritime contracts are presumptively enforceable," Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC, 601 U.S. 65, 76 (2024), the contractual choice of law provisions at issue in this case are inapplicable to Milos' claim against Valero. The Court may therefore proceed with its choice of law determination under federal maritime choice of law principles, weighing factors set out in Lauritzen v. Larsen, 345 U.S. 571 (1953) and the Restatement (Second) of Conflict of Laws § 188 (1971). See Trans-Tec Asia v. M/V HARMONY CONTAINER, 518 F.3d 1120, 1124 (9th Cir. 2008). The factors set out in Lauritzen and the Restatement consider the places implicated by the transaction at issue and the nationalities of the parties. See id. Milos is a foreign corporation with its principal place of business in Santiago, Chile. JSF ¶ 1. Valero is a Delaware corporation with its principal place of business in San Antonio, Texas. Id. ¶ 2. Viewing the facts in the light most favorable to Milos, the Court finds no reason to apply English law to this action. Given the substantial contacts between the United States and the transaction at issue—Valero's alleged failure to pay Milos freight and related charges for the delivery of cargo—the Court concludes that United States law is the most appropriate for resolving this litigation. Accordingly, the Court denies Milos motion for summary judgment based on the contention that Valero is obligated, as a matter of English law, to pay Milos for freight. Having determined that

---

third party sues under the contract, but not when the third party merely benefits from the contract. Nothing in the Ninth Circuit's ruling in this case or this order affects the rights of vessel owners to seek payment from a party that agreed to pay.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL           'O'   JS-6

| Case No. | 2:22-cv-01545-CAS-Ex | Date | October 27, 2025 |
|---|---|---|---|
| Title | Milos Product Tanker Corporation v. Valero Marketing and Supply Company et al | | |

English law does not apply to Milos' claim, the Court need not determine the merits of Milos' claim under English law.

### B. Whether Valero is Entitled to Summary Judgment

Milos argues that, if the Court does not find that English law governs, Milos is entitled to a trial to develop a more complete factual record demonstrating its entitlement to judgment based upon the parties' conduct and communications forming an implied-in-fact agreement to pay freight. Mot. at 20. Milos contends that the Ninth Circuit simply reversed the Court's grant of summary judgment in favor of Milos but that the "Ninth Circuit did not find, nor should this Court find, that Valero is entitled to summary judgment in its favor." Id. Milos argues that the Ninth Circuit did not foreclose that other could establish Valero's exercise and control over the SEAWAY MILOS or the cargo sufficient to find that Valero is obligated to pay freight. Id. at 12.

In opposition, Valero argues that the Ninth Circuit completely resolved whether Valero had an express or implied contractual or equitable obligation to pay freight and related charges to Milos. Opp. at 15. Valero argues that the only issue the Ninth Circuit left unresolved was whether English law provided a basis for liability. Id. Furthermore, Valero argues that there is no basis for trial because the factual record is fixed, with no material disagreements. Id. Valero points out that discovery closed on March 15, 2023, and the parties stipulated that they anticipated the case would be resolved on competing motions for summary judgment. Id. at 14.

In reply, Milos argues that the parties' shared belief that the claims can be resolved on competing motions for summary judgment does not preclude the Court from finding disputed issues of fact to be resolved at trial. Reply at 9.

The Court agrees with Valero that there are no issues of material fact that would prevent summary judgment in favor of Valero. The Court is "bound to follow" the ruling of the Ninth Circuit as to any "issues actually addressed and explicitly or implicitly decided upon in the [Ninth Circuit's] previous disposition." Optional Cap., Inc. v. DAS Corp., 66 F.4th 1188, 1192 (9th Cir. 2023) (quoting United States v. Garcia-Beltran, 443 F.3d 1126, 1130 (9th Cir. 2006)). "The rule of mandate requires a lower court to act on the mandate of an appellate court, without variance or examination, only execution." Garcia-Beltran, 443 F.3d at 1130. Here, the Ninth Circuit mandated reversal of the Court's order granting summary judgment for Milos and remanded for further

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'    JS-6

| Case No. | 2:22-cv-01545-CAS-Ex | Date | October 27, 2025 |
|---|---|---|---|
| Title | Milos Product Tanker Corporation v. Valero Marketing and Supply Company et al | | |

proceedings consistent with its opinion. Opinion at 22. The Ninth Circuit reviewed *de novo* this Court's summary judgment ruling and concluded: "Valero has no express or implied obligation to pay freight, demurrage, or speed-up costs to Milos, and Milos cannot recover in equity." Id. On the issue of a contractual obligation, the Ninth Circuit specifically found that the charter party "provides that GP Global and GP Global alone will pay freight. That is the end of it." Id. at 18. Further, the Ninth Circuit found that "Valero's conduct does not show that it agreed to be bound by the bills of lading . . . And the Charter Party makes freight payable by GP Global alone. So it doesn't really matter if Valero was bound by the bills of lading or not." Id. at 19. At oral argument, counsel for Milos argued that witnesses may be able to testify to facts that would support finding an implied-in-fact contract. However, the Court finds that these speculative assertions are insufficient to create issues of material fact. See F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment."). In other words, based on the same factual record presently before the Court, the Ninth Circuit conclusively resolved the issue of whether Valero was expressly or impliedly obligated to pay freight and related charges to Milos under U.S. law, leaving open only the question of liability under English law.[4] Accordingly, having found that English law does not apply, the Court concludes that Valero is entitled to summary judgment on Milos' claim for breach of contract.

## V.    CONCLUSION

In accordance with the foregoing, the Court **DENIES** plaintiff's motion for summary judgment and **GRANTS** defendant's motion for summary judgment.

IT IS SO ORDERED.

|  | 00 | : | 35 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

[4] At oral argument, counsel for Milos argued that a grant of summary judgment for Valero would be inequitable and fundamentally unfair. The Ninth Circuit also addressed this argument: "True, Valero benefitted from Milos's carriage. But it did not benefit unjustly. . . . Valero paid cost and freight charges to Koch when it purchased the jet fuel under CFR terms. Because Valero was not unjustly enriched, Milos cannot recover from Valero under a quasi-contract." Opinion at 21-22.